IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA YOUNG, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff | ) ) | Case No. 17 C 7825 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| ROLLING IN THE DOUGH, INC., ROLLING IN THE DOUGH II, INC., JWG ENTERPRISES, , LLC; DOMINO'S PIZZA, INC.; DOMINO'S PIZZA FRANCHISING, LLC; DOMINO'S PIZZA, LLC; KENNETH LINDEMAN; JOHN W. GROLL, III, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Samantha Young, individually and on behalf of all others similarly situated, has brought a putative collective action complaint against Domino's Pizza Franchising LLC, Domino's Pizza LLC, and Domino's Pizza, Inc. (collectively "Domino's"), Rolling in the Dough, Inc., Rolling in the Dough II, Inc., and Kenneth Lindeman (collectively "Rolling in the Dough"), JWG Enterprises and John W. Groll III (collectively "JWG") alleging that defendants maintained payroll policies for similarly situated pizza delivery drivers that failed to pay a minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff also alleges violations of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* and Illinois Wage Payment and Collection Act, 820 ILCS 1115/1 *et seq.* Plaintiff has moved for conditional certification under the FLSA pursuant to 29 U.S.C. § 216(b), and issuance of a notice of the collective action to potential class members for two parallel FLSA collective action classes consisting of delivery drivers who worked for Domino's franchises owned and operated by JWG and Rolling in the

Dough for the three years preceding this Order. For the reasons stated below, the court grants plaintiff's motion for conditional certification.

## BACKGROUND

JWG and Rolling in the Dough both operate Domino's Pizza franchise locations across Illinois. JWG employed plaintiff as a pizza delivery driver at its Lisle, Illinois location from March to July 2017. JWG paid plaintiff minimum wage minus a tip credit, for an hourly wage of $5.75 per hour. Plaintiff also received a flat rate of approximately $1.05 per delivery at JWG. Plaintiff estimates she delivered between two and three orders per hour at JWG.

Rolling in the Dough employed plaintiff as a pizza delivery driver in its Willowbrook, Illinois, location during July 2017. At Rolling in the Dough, plaintiff received a base wage of $6.00 per hour plus $0.97 per delivery. Rolling in the Dough did not inform plaintiff that it was deducting a tip credit. Plaintiff estimates she made approximately two deliveries per hour at Rolling in the Dough.

The JWG and Rolling in the Dough defendants both imposed additional expenses on plaintiff. For example, both deducted the cost of a uniform from plaintiff's wages, although plaintiff did not actually receive a uniform from Rolling in the Dough. Further, both required plaintiff to pay all expenses necessary to maintain a safe, operable, and legal vehicle and to pay to maintain an operating cell phone used to make deliveries. Rolling in the Dough defendants also deducted a contribution to the Domino's Partners Foundation from plaintiff's paycheck. Defendant Rolling in the Dough offered to refund plaintiff for the cost of the uniform and the contribution to the Domino's Partners Foundation that she did not authorize. Plaintiff alleges that she received less than minimum wage, after accounting for tip credits, deductions, and other

expenses.

Plaintiff also estimates she spent one quarter to one third of her time at both JWG and Rolling in the Dough performing duties for which she would not receive tips. These duties included doing dishes, cleaning the premises, assembling pizza boxes, tending to the oven, taking orders, and cutting pizza. Regardless of the tasks plaintiff completed during each hour she worked, defendants paid plaintiff the same wage.

## DISCUSSION

### I. Legal Standard

Section 216(b) of the FLSA permits plaintiffs to bring a collective action against an employer for unpaid minimum wages on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). A collective action under section 216(b) differs from a class action under Fed. R. Civ. P. 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under section 216(b) only if they opt into the action by providing their written consent. Woods v. N.Y. Life Inc. Co., 686 F.2d 578, 579–80 (7th Cir. 1982).

Courts in this district employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. Dailey v. Groupon, Inc., 2014 WL 4379232, at *3 (N.D. Ill. Aug. 27, 2014).[1] The first step requires the named plaintiff to establish that the potential class members are similarly situated by making a modest factual showing that they were victims of a common policy or plan to violate the law. Id. "[T]he similarly situated standard is a liberal one ... [that] typically results in conditional certification of a representative class." Rottman v. Old

---

[1] The Court notes Domino's argued that the two-step approach should be rejected. Neither the Supreme Court nor the 7th Circuit, however, have never held that the two-step approach commonly applied by district courts should be rejected.

Second Bancorp, Inc., 735 F.Supp.2d 988, 990 (N.D. Ill. 2010) (internal quotations omitted). Similarly, the modest factual showing standard is lenient and demands only some factual support. Johnson v. Pinstripes, Inc., 2013 WL 5408657, at *2 (N.D. Ill. Sept. 26, 2013). In applying these standards, "the court does not consider the merits of a plaintiff's claims, or witness credibility." Nehmelman v. Penn Nat. Gaming, Inc., 822 F.Supp.2d 745, 751 (N.D. Ill. 2011).

At the second step, which takes place following discovery, the analysis is more rigid and requires the court to consider: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." Dailey, 2014 WL 4379232, at *3. "At that time, a defendant may move to decertify the [class] or divide the class into subclasses." Johnson, 2013 WL 5408657, at *3 (internal quotations omitted).

## II. Analysis

At this stage of the proceedings, the court must determine whether the named plaintiff has made a "modest factual showing" sufficient to demonstrate that the proposed class members were potentially victims of a common policy or plan that violated the FLSA. Gambo v. Lucent Technologies, Inc., 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

Plaintiff alleges that defendants violated the FLSA for two reasons. First, plaintiff claims that delivery drivers for defendants were not paid minimum wage after accounting for tip credits, deductions, and required expenses incurred for the benefit of defendants. Second, plaintiff alleges that defendants required delivery drivers to work in "dual jobs," but failed to compensate employees minimum wage for hours that they were working in a non-tipped capacity.

In the instant case, plaintiff has made a modest factual showing that she and other delivery

4

drivers at JWG and Rolling in the Dough were potentially victims of common policies or plans by both defendants that violated the FLSA. With respect to the JWG defendants, plaintiff cited her own experiences as an employee, conversations with co-workers and management, and paystubs as evidence of a common policy and practice. Plaintiff declared that owner John W. Groll told her that delivery drivers received minimum wage minus a tip credit when she began her employment. Plaintiff also observed JWG co-workers receiving the same $1.05 delivery payment as drivers settled up at the end of their shifts. On one occasion, plaintiff also overheard two co-workers discussing their pay. With respect to Rolling in the Dough, plaintiff declared that her manager told her the company paid delivery drivers $6.00 per hour. Plaintiff also submitted email records showing the same area supervisor, Ron Enstrom, coordinated hiring and handled other human resource issues for multiple Rolling in the Dough locations to demonstrate shared practices between Rolling in the Dough franchise locations.

No defendant has pointed to any reason to suggest that plaintiff was subject to different pay practices or conditions of employment as any other pizza delivery driver, with the exception of slight variation in some drivers' base wage. JWG admitted in their answer to plaintiff's complaint that "delivery drivers who worked at the JWG Store were subject to similar employment policies and practices" and provided no reason for this Court to conclude that employment policies and practices differed for other JWG franchise locations. Rolling in the Dough also admitted in its answer that it "retain[s] some general policies regarding delivery driver's [sic] that apply uniformly to all delivery drivers."

Defendants nevertheless contest conditional certification, arguing that plaintiff is not

similarly situated to other delivery drivers because each employee would necessitate an individualized, fact-intensive inquiry that would incorporate the driver's specific pay rate, varying actual vehicle costs considering each employee's car make and model, and the percentage of time each employee spent performing non-tipped work.[2] The possibility of a fact intensive inquiry, however, does not preclude authorizing notice at the conditional certification stage. Gambo, 2005 WL 3542485 at *4. Following discovery, these factors may be considered during the more rigorous second stage of review to determine whether the class should be decertified. Id. Courts routinely conditionally certify factually similar FLSA cases involving pizza delivery drivers. *See e.g.*, Meetz v. Wis. Hospitality Grp. LLC, 2017 WL 3736776, *4–5 (E.D. Wisc. Aug. 29, 2017); Brandenburg v. Cousin Vinny's Pizza, LLC, 2017 WL 3500411 (S.D. Ohio Aug. 15, 2017). At this stage, the court finds that plaintiff has made a modest factual showing, and therefore carried her initial burden.[3]

Both JWG and Rolling in the Dough also challenge plaintiff's proposed notice.[4] Rolling in the Dough argues that notice should be sent only to employees of its Willowbrook location, where plaintiff worked. As noted above, however, Rolling in the Dough has provided no evidence that it treats is drivers at different locations differently, and has admitted that it applies general policies to

---

[2] Rolling in the Dough argues plaintiff and other delivery drivers were not engaged in dual jobs, citing Schaefer v. Walker Bros. Enterprises, Inc., 829 F.3d 551, 554 (7th Cir. 2016). Schaefer, however, was decided at the summary judgement stage, after the class had already been certified. Further, Schaefer involved the duties of restaurant servers rather than pizza delivery drivers.

[3] Contrary to Rolling in the Dough's argument, plaintiff did not waive her FLSA rights because Rolling in the Dough's offered to refund plaintiff's uniform deduction because the settlement offer did not receive court approval. *See e.g.,* Dye v. Wargo, 253 F.3d 296, 302 (7th Cir. 2001).

[4] Plaintiff has agreed to add a statement to the notice stating: "While the suit is proceeding, you may be required to provide information and participate in discovery and/or trial."

all of its drivers. Rolling in the Dough suggests a 30 day opt-in period, and JWG suggests 60 days, rather than the 90 days suggested by plaintiff. The court concludes that 60 days is a reasonable period in which to contact potential class members. *See* Blakes v. Illinois Bell Telephone Co., 2011 WL 2446598, * 9 (N.D. Ill. June 15, 2011). The court also rejects JWG and Rolling in the Dough's argument that notice should be sent only to drivers employed in the last two years. Plaintiff has properly alleged willful violations of the FLSA, which has a three year statute of limitations. 29 U.S.C. § 225(a); Darrow v. WKRP Management, LLC, 2012 WL 638119, *4 (D. Colo. Feb. 28, 2012). Finally, the court concludes that notice should be sent by mail and email, but not by text.

## **CONCLUSION**

For these reasons the court grants plaintiff's motion [7] for conditional certification. Plaintiff's counsel is directed to correct the proposed notice consistent with this opinion and present it to the court for approval at the March 13, 2018, status hearing.

**ENTER:** **March 8, 2018**

_____
**Robert W. Gettleman**
**United States District Judge**