# EXHIBIT 1

In the United States District Court
for the Northern District of Illinois
Eastern Division

| | |
|---|---|
| Samantha Young, *On behalf of herself and those similarly situated*, Plaintiff, v. Rolling in the Dough, Inc., et al., Defendants. | Case No. 1:17-cv-7825 (RWG) |

Settlement and Release Agreement

This Settlement and Release Agreement (the "Agreement") is entered into by and between, on the one hand, Plaintiffs Samantha Young, Almo Alexander, Caleb J. Buckley, Tommie Burns, Michael C Campbell, Farrah Chinoy, Hang Cui, Naquan Curtis, Nayaka English, Abel Fernandez, Juan Gabriel III, Allen L Gibbons, Edward D. Grace, Samuel Hoke, Robin Kendall, Kyle Kottwitz, Jacob Wesley Martin, Juan Mims, Jheru Deondre Slyk Montanez, Joshua Nyhart, Dylan J Oelker, Ryan Stevens, Cristian Lopez Temblador, Tamara R Thompson, Jacob Michael Veyette, Melissa Walter, Alonzo Williams, Hazem Rihani, Daniel C. Pantano, Abdulatif Almokdad, Drayvona Cobige, Jason Sarik, Spencer C. Schluter, Victoria Thompson, Jose Villagomez, Scott Swolinski, Christine Hughes, Nicholas Jacobson, Jeremy Kohler, Jesus Montoya, Khlad Mustafa, Jacob Nikolas, Nicholas Panoski, Diane Pech, Francisco Pilia, Jonathan K. Porter, Frank Scarcello, Gerald A. Schaefer, Jessica Smith, Renee Smith, Anthony Spillman, Justin Stellmacher, John Van Duyn, Jarvis Walton, Anthony V. Whitney, Aaron Wiens, Nick Williams, Robert Williams, Shaquille Young, Mohammad Almohazam, Jose Altamirano, Matthew Bakosh, Stephanie Banks, Karolina Barszcz, Tamira Bishop, Lawanda Bradford, Maksym Bushko, Willie Campbell, John Clark, Danielle Crawford , Kory T. Crotteau, Thomas R. Farrell, Alec Fecteau, Laura Fountain, Russell Fountain, Leo Gaerke, Jennifer George, Madeline Ashley Grewe, Straughter J. Guthrie, Arturo Calderon, Luis F. Herrera Castillo, John Davis, Shameka Falconer, Jennifer George, Jake Melerski, Gregory Nowak, Tristin Osborne, Fidel Vazquez, Kevin Warner, Jr., Sergio Zitlatl, Paul Patterson, Angela Nguyen, Eluisco Vanegas-Flores, Daniel J. Klamerus, Michael Laurisa, Jacob Urbancik, Dennis Tirodo, Alaaldin Saleem, Mason Krusz, Aaron Durr, Christine R. Durbin, Quinn Lueder, Marcus McDougle, William F. O'Neil, Joe (Abdeljalil) Benchbaba, Julio Cruz, Jacob Elmore, Brandon Harford, Jaime Macedo-Castrejon, Adrean A. Morales, Lizandro Torres

1

Lopez, Eddiel Santiago Ayala, Matt Briggs, Theodore R. Buene, Jr., Brian Casey, Fatima DeLuna, Nelson Garcia, Matthew River Gurn, Caitlin Kirlin, Ana Macias, Sandra Lopez Reyes, Mahmoud Salim, Phillip Ferenzi, Karina Ontiveros, Cody Rodman, Pedro Gonzalez, Daniel Chatfield, Robert Anthony Deacon, Lisa Marie Eads, Nurlan Toktogulov, Guadalupe Villarreal, and Plaintiff Samantha Young, individually and on behalf of all similarly-situated individuals identified in Section 1(B) below ("Plaintiffs"), and, on the other hand, Defendants Rolling in the Dough, Inc., Rolling in the Dough II, Inc., and Kenneth Lindeman (collectively herein, "Defendants"). Defendants and Plaintiffs will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

    A. On October 31, 2017, Plaintiff initiated the lawsuit *Samantha Young v. Rolling in the Dough, Inc., et al.* (the "Lawsuit" or "Litigation"), currently pending in the United States District Court, Northern District of Illinois (Eastern Division) (the "Court"), Case Number 1:17-cv-7825 (RWG).

    B. The Parties seek to resolve all claims raised in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following settlement class:

    > All current and former delivery drivers employed from October 31, 2014, until July 31, 2019, at the Rolling in the Dough Domino's stores owned, operated, and/or controlled by Defendants. These individuals are collectively referred to as "the Class" and individually as "Class Members."

    "Rolling in the Dough Domino's stores" includes the following locations:

    1. Store No. 2710 – 1009 N. Northwest Hwy., Park Ridge, IL
    2. Store No. 2711 – 1036 S. York Road, Elmhurst, IL (prior to 9/2/17)
    3. Store No. 2721 – 450 E. Dundee Road, Palatine, IL
    4. Store No. 2724 – 211 E. Army Trail Road, Glendale Heights, IL
    5. Store No. 2738 – 1450 W. Main Street, St. Charles, IL (prior to 9/2/17)
    6. Store No. 2759 – 1415 W. Irving Park Road, Chicago, IL
    7. Store No. 2776 – 24 S. Prospect Ave., Clarendon Hills, IL
    8. Store No. 2779 – 5016 S. Pulaski Road, Chicago, IL (since 2/15/16)
    9. Store No. 2784 – 6613 Cermak Road, Berwyn, IL
    10. Store No. 2808 – 619 W. Roosevelt Road, Wheaton, IL
    11. Store No. 2847 – 5531 Belmont Road, Downers Grove, IL
    12. Store No. 2865 – 5912 N. Clark Street, Chicago, IL
    13. Store No. 2869 1453 E. Hyde Park Blvd., Chicago, IL
    14. Store No. 2905 – 6942 S. Kingery Highway, Willowbrook, IL (prior to 9/2/17)
    15. Store No. 2908 – 127 State Street, Batavia, IL (prior to 9/2/17)

16. Store No. 9188 – 6617 N. Clark Street, Chicago, IL (since 12/3/17)

The "Class Period" is from October 31, 2014 until July 31, 2019.

C. The purpose of this Agreement is to conclusively and finally resolve all of Plaintiffs' and Class Members' unpaid minimum and overtime wage claims against Defendants that were raised as part of the Lawsuit and occurred during the Class Period.

D. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void.

E. The "Effective Date" of this Agreement shall be the date the agreement is fully executed by all Parties.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

   A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations included a settlement conference before Magistrate Judge Aaron Goodstein of the Eastern District of Wisconsin on June 21, 2019, followed by additional in-person negotiations between the parties on July 30, 2019 and July 31, 2019.

   B. The Parties agree that the consideration given to support the obligations under this Agreement is sufficient in all respects and that the Parties have not received or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

   C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

   D. Prior to the negotiation, Defendants provided to Plaintiffs' summary mileage and reimbursement data for approximately 70 opt-in Plaintiffs, all mileage for the opt-in Plaintiffs who had not been compelled to arbitration, and class-wide, annual mileage and reimbursement data dating back to October 2014 from which the parties negotiated this Agreement. Defendants also provided Plaintiffs with payroll data for the opt in Plaintiffs. Following the Effective Date of this Agreement, Defendants will provide Plaintiffs with data reflecting the hours worked by each Class Member for Plaintiffs to calculate claims and damages.

3. **Settlement and Disbursement**

   A. To settle the Lawsuit, and in consideration of the release of claims and dismissal of the Lawsuit, Defendants agree to pay $807,500.00 (the "Settlement" or "Settlement

3

Amount"). The Settlement accounts for all payments and claims raised in the Lawsuit by Plaintiffs and Class Members through the Class Period, including those for attorney's fees, costs and expenses, and service awards, up to and including approval of the settlement and disbursement of settlement proceeds. It also includes up to $7,500 for claims administration.

B. The Settlement is the maximum amount of money that Defendants could be required to pay to Plaintiffs and Class Members, even if 100% of Class Members cash their settlement checks, described below.

C. After the Notice Period and according to the timetable explained in Section 6 below, the Claims Administrator will issue checks to each Class Member who does not Opt Out of the Settlement based on each Class Member's "Pro Rata Share," calculated as follows:

  i. Any amounts awarded for attorneys' fees, reimbursed costs and expenses, claims administration (up to $7,500), service awards, any other amounts not allocated to class members will be subtracted from the Settlement. The remainder will be the Class Fund, which shall be distributed as follows:

  ii. First, the total hours worked by each Plaintiff/Class Member who opted into the case by July 31, 2019 will be multiplied by 1.5.

  iii. Second, that amount will be added to the total hours worked by each Plaintiff/Class Member who did not opt into the case by July 31, 2019 and did not Opt Out during the Notice Period described in Section 6 below. This sum will be the "Hours Total."

  iv. The Pro Rata Share of each Class Member who opted into the case by July 31, 2019 will be equal to 1.5 times their total hours worked divided by the Hours Total.

  v. The Pro Rata Share of each Plaintiff/Class Member who did not opt into the case by July 31, 2019, will be equal to their total hours worked divided by the Hours Total.

  vi. Finally, each Plaintiff/Class Member's check will be equal to their Pro Rata Share multiplied by the Class Fund.

D. The Claims Administrator will issue to each Class Member who does not Opt Out a single check as follows:

  i. Three-quarters of each check will be treated as expense reimbursement, and one-quarter of each check will represent unpaid wages, subject to withholdings. A Form W2 will issue to Plaintiffs/Class Members by Claims Administrator for the wages portion of the settlement payment, as required by law. Defendants will provide to

4

      the Claims Administrator all tax information they have available to them with regard to the Class Members. To the extent required by law and not otherwise available from the records provided by Defendants, the Claims Administrator will obtain necessary tax documentation from the Class Members prior to issuance of the settlement checks.

    ii. The Parties are responsible for ensuring their own proper tax treatment of the payments. In addition to the Settlement Fund, Defendants will be responsible for their own portion of employer taxes arising from this Agreement, if any. The Parties also agree and understand any payments under this Agreement are not intended to, and will not form the basis for, nor shall they be considered wages for calculating, or re-calculating, additional contributions to, or benefits under, any benefit or compensation plans maintained by the Defendants for the benefit of their employees and their employees' beneficiaries.

E. The Claims Administrator will, from the Settlement, pay to Plaintiff Young $10,000 as a service award, unless the Court disapproves of the award or alters it in some way. This amount will come from the Settlement and will count toward the maximum amount of the Settlement. The service award will be payable by a separate check and will be considered as Form 1099 income.

F. The Parties agree to retain a third-party Claims Administrator to distribute Notice of the settlement, to establish a Qualified Settlement Fund, and to administer all payments pursuant to this Agreement. The Claims Administrator's fees and expenses, not to exceed $7,500.00, will come from the Settlement and will count toward the maximum amount of the Settlement. Should the Claims Administrator's fees and expenses exceed this amount, the remainder will be paid by Defendants separate from the Qualified Settlement Fund.

G. In the event that Plaintiffs, Class Counsel, and/or Class Members believes he/they must petition the Court to enforce or interpret this Agreement and/or if Defendants fail to make one or more payments as outlined above, Plaintiffs and Class Members will provide written notice to Defendants of the issue. Defendants will then have 14 days to cure the breach or other issue. If Defendants do not cure, Plaintiffs, Class Counsel, and/or Class Members can request from the Court an entry of judgment against Defendants jointly and severally for the amount damages suffered as a result of the breach of the Settlement Agreement (including approved attorneys' fees) plus applicable interest and any other appropriate relief, including declaratory judgment. Further, as under the FLSA, in the event they prevail, Plaintiffs, Class Counsel, and/or the Class Members will be entitled to recover reasonable attorneys' fees and costs associated with obtaining such a judgment and its enforcement. In the event that such a motion is unsuccessful and deemed frivolous, Defendants may seek reasonable attorney's fees incurred in defense of such a motion.

H. All payments set forth in this Section 3 are subject to Court approval of the Settlement (including response to any objections or inquiry in response to the CAFA notice, which

shall be issued by the Claims Administrator if required by law) and dismissal of the lawsuit with prejudice upon submission of an appropriate motion by Plaintiffs' Counsel. Defendants agree not to oppose that motion to the extent Defendants' Counsel agrees upon the form and content of such motion.

4. **Attorneys' Fees and Expenses**

    A. Defendants agree not to object to an attorneys' fee award equal to or less than one-third of the Settlement ($269,166.66). In addition, Defendants agree not to object to Plaintiffs' counsels' anticipated request for reimbursement of litigation costs and expenses. To the extent approved by the Court, these amounts will be subtracted from the Settlement Amount and will count towards the maximum amount of the Settlement.

    B. Plaintiffs and Named Plaintiff, Samantha Young, on behalf of the Class Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that each has or may have against Defendants for attorneys' fees, costs, or expenses associated with this Lawsuit, including but not limited to those attorneys' fees, costs, or expenses associated with Plaintiffs' Counsel's representation of Plaintiffs and the Class Members in this Lawsuit. Plaintiffs and Named Plaintiff, Samantha Young, on behalf of the Class Members, further understand and agree that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Plaintiffs' Counsel's representation of Plaintiffs and Class Members in this Lawsuit, excluding any attorneys' fees, costs, and expenses associated with enforcing the settlement.

    C. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' fees and costs and such appeal will not be deemed an appeal of this Agreement or the Settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for attorneys' fees and costs.

5. **Release**

    A. "Released Parties" means Rolling in the Dough, Inc., Rolling in the Dough II, Inc., Kenneth Lindeman, and any related entities, along with all respective owners, members, stockholders, franchisors, including Domino's Pizza LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, and all persons acting by, through, under or in concert with them. This settlement does not relate to or affect JWG Enterprises, LLC and/or John W. Groll.

All Plaintiffs who opted in to this case prior to July 31, 2019 release all wage and hour claims accrued from October 31, 2014, through July 31, 2019, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and the wage and hour laws of Illinois, including but not limited to the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, relating to tip credit notice, dual jobs claims, uniform or Dominos Partners Foundation deductions, and expense reimbursement claims.

Each other Class Member who cashes or negotiates his or her settlement check releases all wage and hour claims accrued from October 31, 2014, through July 31, 2019, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and the wage and hour laws of Illinois, including but not limited to the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, relating to tip credit notice, dual jobs claims, uniform or Dominos Partners Foundation deductions, and expense reimbursement claims.

The back of each settlement check issued to Plaintiffs and Class Members will contain the following release language applicable to Class Members who cash or negotiate their settlement checks:

> By signing and cashing or otherwise negotiating this check, I agree to join the lawsuit *Young v. Rolling in the Dough* pending in the United States District Court for the Northern District of Illinois (Case No. 1:17-cv-7825 (RWG)) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit relating to under-reimbursed expenses, tip credit notice, dual jobs, and uniform deductions under the federal Fair Labor Standards Act and Illinois wage and hour law.

B. All Plaintiffs who opted in to this case prior to July 31, 2019 shall release the above described claims regardless of whether he or she timely signs and cashes or otherwise negotiates his or check. However, all other eligible Class Members who do not timely sign and cash or otherwise negotiate their checks will not release any claims.

6. **Settlement Administration**

   A. Pursuant to Rule 23(e), the Class Members will receive a Notice of Settlement (attached hereto as Exhibit A) in accordance with the deadlines established in this Agreement, and the following timetable, subject to the Court's approval:

   i. Within fifteen (15) days of the Court granting preliminary approval of the Settlement, Defendants will provide the Claims Administrator with a class list

7

        containing the names, last known addresses, last known email addresses, last known phone numbers, and social security numbers of the Class Members. Within the same timeframe, Defendants will provide to Class Counsel the same class list and information with the exception of social security numbers.

ii. The Claims Administrator will promptly run a skip trace search on each Class Member and make other reasonable efforts to ensure they have the most up-to-date address for each Class Member. Within fifteen (15) days of receiving the class list, the Claims Administrator will provide the Notice of Settlement, attached hereto as Exhibit A, to each Class Member by mail and email.

iii. The Notice Period will be sixty (60) days from the date the Notice of Settlement is mailed. Class Members who wish to object to or opt out of the Settlement must do so during the Notice Period.

iv. Class Members who wish to opt out from this Agreement and Settlement must submit a timely written notification of intent to opt out of the settlement ("Opt-out Notice") no later than 60 days from the initial mailing of the Notice. To be valid, the Opt-out Notice, the notice must contain the following statement or a similar statement:

> I wish to opt out of the Settlement of the case, *Samantha Young v. Rolling in the Dough, Inc., et al.* I understand that by requesting to opt out from the Settlement, I will receive no money from the settlement funds created in accordance with the Settlement Agreement in this case. I understand that if I opt out from the class monetary settlement, I may bring a separate action. I understand that in any separate lawsuit, I may receive nothing or less than I would have received had I filed a claim for money under the Settlement agreement in this case.

v. A Class Member who submits an Opt-out Notice is not eligible to recover a share of the Settlement and their Hours worked will not be included in the Hours Total for purposes of calculating each Class Member's Pro Rata Share of the Settlement Fund.

vi. Class Members who wish to object to this Agreement must file a written objection with the Court and serve copies of the filing on Class Counsel and Defendants' counsel no later than 60 days from the initial mailing date of the Notice. Objections will be deemed timely returned if they are postmarked on or before the 60th day after the initial mailing of the Notice. The time to submit an objection will not be increased for returned mailings. The objection will include the objecting party's full name, address, telephone number and email address. The objection must state the objection to the settlement, the basis for the objection, and all documents that support the objection. Class Members who fail to make objections in the manner

8

specified above will be deemed to have waived their ability to object to the Agreement and, therefore, will be foreclosed from making any objection (whether by subsequent objection, intervention, appeal, or otherwise) to the Agreement. If Class Counsel receives objections, Class Counsel will provide Defendants' counsel with notice of any such objections received.

If 10% or more Class Members Opt-Out of the Settlement, then Defendants may declare the Agreement void and the matter will proceed as if a settlement had not be reached unless the parties agree to renegotiate terms. Defendants will take no action to encourage Class Members to Opt-Out of the Settlement.

B. As soon as practicable after the close of the Notice Period, Class Counsel will move the Court for Final Approval of the Settlement. Plaintiffs will give Defendants an opportunity to review their proposed Motion for Final Approval before it is filed.

C. If the Court grants Final Approval of the Settlement, the Parties agree to the following timeline for the completion of the settlement process and dismissal of the Lawsuit:

   i. <u>Payment Due Date:</u> The Settlement payments must be distributed to Class Members by April 1, 2020, or sixty (60) days after the Court grants final approval of the Settlement, whichever is later.

   ii. <u>Deadlines for Settlement Administration:</u> The deadlines below are set as if the Court entered final approval on or before January 1, 2020. If the Court's Order granting final approval is entered after January 1, 2020, the deadlines below should be extended by the number of days after January 1, 2020 that final approval was entered. For example, if final approval was entered on January 8, 2020, each of the deadlines below would be extended by 7 days.

   iii. <u>Production of Class Data:</u> By January 15, 2020, Defendants will transmit to Plaintiffs' Counsel the hours data for each Plaintiff and each potential Class Member who has not opted out.

   iv. <u>Settlement Payment Calculations:</u> By January 31, 2020, Plaintiffs' Counsel will transmit to Defendants' Counsel and Claims Administrator the amount of the payments due to Plaintiffs and potential Class Members under the Settlement Agreement. By no later than February 7, 2020, Defendants' Counsel shall state any objections to Plaintiffs' Counsel's calculations. The parties will work in good faith to resolve any objections within 7 days of the objection being raised. Plaintiffs will thereafter transmit the final payment calculations to the Claims Administrator.

   v. <u>Issuance of Checks:</u> By March 14, 2020, Defendants will send the Claims Administrator a check for the amount of the Settlement to fund a Qualified Settlement Fund ("QSF"). By April 1, 2020, the Claims Administrator will deliver

        the settlement checks to the Class Members. Envelopes containing a settlement check will be marked on its face with the words "Rolling in the Dough Delivery Driver Settlement." The settlement checks will be negotiable for 150 days from the date they were mailed by Claims Administrator. Each check will clearly state on its face that it must be cashed within 150 days of the postmark date on the envelope containing the check.

vi. <u>Attorneys' Fees, Expenses, and Service Awards:</u> By April 1, 2020, the Claims Administrator will deliver checks for the payment of any awards from attorneys' fees, costs and expenses, and service awards from the QSF. Plaintiffs' Counsel will send the Claims Administrator current IRS Form W9s to process the payments set forth herein.

vii. The check for attorneys' fees and expenses will distributed and made payable as follows:

10% of any fee award will be made payable to Maduff & Maduff, LLC. The check will be delivered to:

Aaron Maduff
Maduff & Maduff, LLC
205 N. Michigan Ave., Suite 2050
Chicago, IL 60601

75% of any fee award will be made payable to Biller & Kimble, LLC. The check will be delivered to:

Andrew Kimble
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209

15% will be made payable to Michael L. Fradin, Esq. The check will be delivered to:

Michael L. Fradin
8401 Crawford Ave., Suite 104
Skokie, IL 60076

viii. Any checks for an expense award will be made payable and delivered as Class Counsel directs.

ix. The check for Plaintiff Young's service award will be made payable to Samantha Young. The check will be delivered to:

10

> Andrew Kimble
> Biller & Kimble, LLC
> 3825 Edwards Road, Suite 650
> Cincinnati, OH 45209

    x.    <u>Undeliverable Class Member Checks:</u> If any checks are returned to the Claims Administrator as undeliverable with a forwarding address, Claims Administrator will forward the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, Claims Administrator will attempt to contact to employee and obtain an updated address. If Claims Administrator is able to obtain an updated address, Claims Administrator will forward payment to the updated address. If a new settlement check is sent to an updated address, the employee shall have 150 days from the mailing of the second check to cash or negotiate the check.

    xi.    <u>Follow-up with Class Members:</u> If settlement checks remain outstanding 60 days after being sent, Claims Administrator shall call Class Members who have not cashed or negotiated the settlement check and remind them of the payment. Class Members who cannot be reached by phone will be sent a reminder email by Claims Administrator.

    xii.    <u>Unclaimed Money:</u> Any money from a Class Member's settlement check that is not claimed within the 150-day period for cashing checks—*i.e.*, the check is not timely cashed or negotiated by a Class Member—will revert to Defendants. No tax reporting forms will be issued to or for any Class Member who did not negotiate his or her settlement check.

D.  <u>List of Releasees</u>: At the conclusion of the 150-day period, the Claims Administrator shall provide the Parties' Counsel with a list of Class Members who did and did not cash or negotiate their settlement checks. The Claims Administrator shall also send Defendants' Counsel electronic copies of the cancelled settlement checks for Defendants' recordkeeping purposes.

E.  <u>Contact:</u> Neither Defendants nor their legal counsel will contact any of the Class Members regarding the terms of this Settlement and/or a Class Member's participation in the Settlement. If any inquiry by a Class Member is directed at Defendants or their legal counsel, Defendants and/or their legal counsel will (1) tell the Class Member that they are not permitted to discuss the settlement with the Class Member and (2) direct the Class Member to call Class Counsel and provide contact information for Class Counsel. Acceptable contact information is:

> Andrew Kimble
> Biller & Kimble, LLC
> 3825 Edwards Road, Suite 650

11

       Cincinnati, OH 45209
       (513) 715-8711
       akimble@billerkimble.com
       billerkimble.com

7. **Dismissal of Lawsuit with Prejudice**

Upon the conclusion of settlement procedure outlined herein, the Parties stipulate that the Lawsuit and pending arbitrations filed by any Class Members will be dismissed with prejudice.

8. **No Admission of Liability**

   A. By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiffs or to the Class, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action treatment, other than for purposes of settlement.
   B. Certain Plaintiffs and potential Class Members executed arbitration agreements with Defendants prior to July 31, 2019. By entering into this Agreement, Defendant does not waive or otherwise modify the provisions of such arbitration agreements or any other applicable arbitration agreements between Defendants and any person(s). Rather, this Agreement with respect to such persons is a voluntary settlement of disputed claims that is contemplated to include both the alleged claims of persons permitted to litigate claims in court as well as the alleged claims of persons bound to pursue claims in arbitration. Defendant hereby retains all rights to enforce any and all arbitration agreements between Defendants and any other persons whose claims are not fully and finally resolved by this Agreement and to rely on such arbitration agreements for any other purpose. The Parties hereby agree that this Agreement shall not be used as evidence of liability in any arbitration proceeding or used as evidence of any waiver of Defendants right to enforce any arbitration agreement with any person.
   C. Settlement of the Lawsuit and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, and shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, and shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement.

DocuSign Envelope ID: 151C8939-5428-4CBD-8B89-E52450527A8D

9. **Effect of Failure to Grant Approval:** In the event the Court fails to enter an order approving the settlement in accordance with this Agreement (except for a modification of the attorneys' fees or Service Award) the Parties shall proceed as follows:

   i. The Lawsuit will resume unless the Parties jointly agree to: (a) seek reconsideration or appellate review of the decision denying approval of settlement, (b) attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement, or (c) one or both of the Parties appeals the decision.

   ii. In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement. The Agreement shall be void and the Parties shall revert to their position *status quo ante*.

10. **Notice under this Agreement shall be as follows:**

    **Plaintiffs' Counsel:**
    Andrew Kimble
    Biller & Kimble, LLC
    3825 Edwards Road, Suite 650
    Cincinnati, OH 45209
    akimble@billerkimble.com

    **Defendants' Counsel:**
    Timothy Scahill
    Borkan Scahill
    Two First National Plaza
    20 South Clark Street, Suite 1700
    Chicago, IL 60603
    tscahill@borkanscahill.com

11. **Other Terms**

    A. Plaintiffs and Plaintiff Young, on behalf of herself and the Class Members, represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit.

    B. No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties or their representative. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

C. This Agreement including any exhibits constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

D. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, except for the releases contained herein, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance. To the extent the releases contained in the Agreement are held to be illegal, invalid, or unenforceable, the Parties shall proceed as follows:

   i. The Lawsuit will resume unless the Parties jointly agree to: (a) seek reconsideration or appellate review of the decision denying approval of settlement, (b) attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement, or (c) one or both of the Parties appeals the decision.

   ii. In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement. The Agreement shall be void and the Parties shall revert to their position *status quo ante*.

E. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

F. Except as otherwise provided herein, all Parties shall bear their own costs, expenses and attorneys' fees relating to this Agreement and the Lawsuit.

G. Illinois law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Agreement.

H. This Agreement may be executed by facsimile and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

I. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the

14

Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

J. If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

_____            10/7/2019
Samantha Young,                                      Date
Individually and as Class Representative for Plaintiffs


_____            _____
Kenneth Lindeman, on behalf of                       Date
Rolling in the Dough, Inc. and
Rolling in the Dough II, Inc.


_____            _____
Kenneth Lindeman, on behalf of himself               Date