IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Samantha Young,<br><br>*On behalf of himself and others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Rolling in the Dough, Inc., *et al.*,<br><br>Defendants. | Case No. 1:17-cv-07825 |

ORDER GRANTING
PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL

Before the Court are Plaintiff Samantha Young's unopposed motion for final approval of the class action settlement (Doc. 175) and the oral arguments presented by counsel at the fairness hearing on February 27, 2020. For the reasons stated below, the Court grants Plaintiff's motion.

## I. Background

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores owned and operated by Rolling in the Dough, Inc., Rolling in the Dough II, Inc., and Kenneth Lindeman. *See* Complaint, Doc. 1. Plaintiff filed her Complaint on October 31, 2017. *Id.* On November 7, 2017, Plaintiff moved to conditionally certify this matter as a collective action. *See* Doc. 7. On March 8, 2020, this Court granted Plaintiff's motion to conditionally certify this action as a collective action under the Fair Labor Standards Act. Doc. 41. During the opt-in period, 130 delivery drivers joined the case to pursue their FLSA claims.

On August 23, 2018, the Court granted Plaintiff's motion to voluntarily dismiss without prejudice Defendants Domino's Pizza, Inc., Domino's Pizza, LLC, and Domino's Pizza Franchising, LLC. Doc. 94.[1]

Plaintiff's primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. Plaintiff maintains that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 258 (S.D.N.Y. Oct. 21, 2008). "As a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146-TMR, 2019 WL 5725043, *7 (S.D. Ohio Nov. 5, 2019) (citing DOL Field Operations Handbook § 30c15).

Second, Plaintiff asserts that Defendants paid him and other delivery drivers a tipped wage rate for hours worked in a non-tipped capacity. Doc. 1 at ¶¶ 347-48. Drivers were typically paid a tipped wage rate while on the road and while working inside the store. Plaintiff contends that because the job duties completed inside the store were not "tipped duties," nor were they related to the drivers' tipped duties, this practice violated the FLSA's policy prohibiting payment of a tipped wage rate for an employee working "dual jobs"—one that generates tips and another that does not. *See* 29 C.F.R. § 531.56(e).

---

[1] The Court notes that two Defendants, JWG Enterprises, LLC and John W. Groll III, are not parties to the Settlement Agreement, and have not made an appearance in the case since the Court granted their prior counsel's Motion to Withdrawal, Doc. 105. The Court is informed that Plaintiff intends to move for default judgment against these remaining Defendants, and will do promptly after the Court's grant of Final Approval.

Third, Plaintiff asserts that delivery drivers had improper deductions taken from their wages for uniforms and for contributions to the Domino's Partner's Foundation. Doc. 1 at ¶¶ 164-71. Plaintiff contends that for the same reasons Defendants are not permitted to force delivery drivers to pay automobile expenses that benefit the company, they cannot charge deductions against delivery drivers' wages to their benefit if such deduction reduces the drivers' wages below the applicable minimum wage.

Finally, Plaintiff claims that these same policies violate the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA").

Defendants deny all of Plaintiff's claims.

## II. The Settlement Agreement

The parties' Settlement Agreement creates a Settlement Fund of $807,500 that will be distributed to 995 class members who worked for Defendants as delivery drivers between October 31, 2014 to July 31, 2019. Doc. 166-2. The settlement amount includes money that will go toward attorney's fees, expenses, administration costs, and a service award.

Generally speaking, the settlement money is allocated to class members based on (1) whether they opted in to the case in response to the collective action notice from prior to July 31, 2019, and (2) how many hours they worked for Defendants. Those individuals who filed consent to join forms in response to the collective action notice prior to July 31, 2019 may have preserved more of their FLSA claims than those who have not submitted a claim form for their FLSA claims, and have possible claims for FLSA liquidated damages (during a longer statutory period) that the non-responding class members do not have. For purposes of determining the class members' *pro rata* share of the Settlement Fund, the Settlement Agreement calculates the miles driven by the

approximately 130 delivery drivers who submitted claim forms in response to the FLSA collective action notice at a 1.5x rate, and calculates the miles driven by the other 865 delivery drivers who did not respond to the FLSA collective action notice at a 1x rate.

Class members who cash or otherwise negotiate their checks agree to the following release of claims, which will be stated on the back of their settlement check:

> By signing and cashing or otherwise negotiating this check, I agree to join the lawsuit *Young v. Rolling in the Dough* pending in the United States District Court for the Northern District of Illinois (Case No. 1:17-cv-7825 (RWG)) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit relating to under-reimbursed expenses, tip credit notice, dual jobs, and uniform deductions under the federal Fair Labor Standards Act and Illinois wage and hour law.

Doc. 166-2, ¶ 5.A. Class members who do not timely sign and cash or otherwise negotiate their checks will not release any claims. *Id.* at ¶ 5.B.

## III. Analysis

### a. Class Certification is Appropriate for Settlement Purposes.

The Court hereby certifies the following Rule 23 settlement class:

> All current and former delivery drivers employed from October 31, 2014, until July 31, 2019, at the Rolling in the Dough Domino's stores owned, operated, and/or controlled by Defendants. These individuals are collectively referred to as "the Class" and individually as "Class Members."

Doc. 166-2, ¶ 1.B.

"The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) (3)." *Zolkos v. Scriptfleet, Inc.*, No. 12-cv-8230-GF, 2015 WL 4275540, *1 (N.D. Ill. Jul. 13, 2015). Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 995 class members, and thus, joinder is impracticable. *Id.*

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2) because Plaintiff and the class members share common issues of fact and law. *Id.* (finding commonality where employees challenged policy of classifying employees as independent contractors). Plaintiff alleges that Defendants' reimbursement policy harmed all of the class members in the same way.

For the same reason, Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff Samantha Young's claims arise from the same factual and legal circumstances that form the basis of the class members claims. *Id.* at *2.

Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that they have interests antagonistic to or at odds with those of Class Members. *Id.* Plaintiff Samantha Young was actively involved in the case, including reviewing Plaintiff's pleadings and mediation statements, discussing and analyzing Defendants' settlement proposals, and being present at the Final Fairness Hearing.

Plaintiff also satisfies Federal Rule of Civil Procedure 23(b)(3). *Id.* Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, paid them at the wrong rate for some hours, and took improper deductions from wages—predominate over any factual or legal variations among Class Members.

The Court appoints Biller & Kimble, LLC, Maduff & Maduff, LLC, and The Law Firm of Michael Fradin as class counsel because they meet all of the requirements of Rule 23(g). "Class Counsel did substantial work identifying, investigating, prosecuting, and settling [Plaintiff's and the class members'] claims." *Zolkos*, 2015 WL 4275540, *2. "The work that Class Counsel has performed both in litigating and settling this case demonstrates their skill and commitment to representing the class's interests." *Id.*

The Court also finds that all FLSA opt in Plaintiffs are properly joined to the case, and that no certification ruling is required with respect to the FLSA claims. *See, e.g., Mickles v. Country Club Inc.*, 887 F.3d 1270, 1274-76 (11th Cir. 2018) (holding that FLSA opt in plaintiffs have independent status as plaintiffs); *Buckles v. EUBA Corp.*, No. 3:18-cv-355-WHR, 2019 WL 4645915, *3 (S.D. Ohio Sept. 24, 2019) (citing *Genesis Healthcare Corp. v. Symczk*, 569 U.S. 66 (2013)).

The Court **GRANTS** certification of a Rule 23 settlement class of Defendants' delivery drivers employed between October 31, 2014 and July 31, 2019.

**b. The parties' settlement is fair, reasonable, and adequate.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted). "Federal courts naturally favor the settlement of class action litigation." *Id.* The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Id.* at 1197 (citation omitted). Courts consider five factors when evaluating a class settlement: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed. *Butler v. Am. Cable & Tel., LLC*, No. 09-cv-5336-MTM, 2011 WL 4729789, *9 (N.D. Ill. Oct. 6, 2011); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Here, the Court finds that the parties' settlement is fair, reasonable, and adequate.

***The strength of Plaintiff's case compared to the terms of the proposed settlement.*** The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides. The final settlement amount was agreed to after a contested motion for FLSA collective action certification, extensive discovery and discovery disputes, and an unsuccessful settlement conference with Magistrate Judge Aaron Goodstein. Both parties have arguments relating to liability and damages calculations that present substantial risks for going forward to judgment or trial. The parties argue for different legal standards with respect to the reimbursement claim and contest the factual circumstances surrounding the "dual jobs" claim.

The resulting settlement agreement provides a substantial award to nearly 1,000 minimum wage workers. The settlement also contains a narrow release limited to the claims asserted in this case, and preserves all of the rights of any class member who, for one reason or another, does not ultimately cash or otherwise negotiate their settlement check.

The Court also finds that the allocation of the settlement to the delivery drivers is fair, reasonable, and adequate. The drivers who returned consent to join forms in response to the FLSA collective action notice will have their hours worked calculated at 1.5x to account for the fact that they have more valuable claims that cover a longer statute of limitations period. *Pfefferkorn v. Primesource Health Grp.*, No. 17-cv-1223-JRB, 2019 WL 354968, *8 (N.D. Ill. Jan. 29, 2019) (stating "[t]he FLSA statute of limitations runs until each opt-in class member files a written consent to join the action").[2] In addition to the tolling of the statute of limitations achieved by the delivery drivers returning their FLSA consent forms, FLSA claims carry with them a possibility of liquidated damages in the amount of one times unpaid wages, which could possibly be stacked

[2] Arguments for equitable tolling notwithstanding.

with the Illinois damages to which all class members have the same claims. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed.Appx. 496, 498-99 (10th Cir. 2015) (holding that Colorado wage law damages could be awarded in addition to FLSA liquidated damages because the two types of damages served different purposes). Thus, it is reasonable to give those individuals a larger share of the settlement fund. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, *2 (S.D. Ohio Nov. 25, 2019) (approving distribution method of 1.5x for individuals who filed FLSA consent to join forms).

The Court finds that the settlement reflects a fair compromise of the various contested issues in this case.

***The likely complexity, length, and expense of continued litigation.*** From the outset, the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, *5 (S.D. Ohio Oct. 17, 2018) (concluding a case raising the same delivery driver reimbursement claim "involved complicated issues of fact and law."). This case was no exception. It involved complex issues of fact and law regarding the legally-mandated reimbursement rate for delivery drivers and the application of the FLSA's "dual jobs" rules. Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming.

Continued litigation delays payment class: "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

Continued litigation would be difficult and complex, and this weighs in favor of the settlement.

***The amount of opposition to the settlement among affected parties.*** The parties support the approval of the settlement. No class member objected or opted out to the settlement. This factor weighs in favor of approval. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F.Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many class members); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same); *see also Wal-Mart Stores, Inc v. VISA U.S.A., Inc.*, 396 F.3d, 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be indicative of the adequacy of the settlement.").

***The opinion of competent counsel.*** Class Counsel believes that the settlement is fair, adequate, and reasonable. Class Counsel litigates pizza delivery driver cases all around the country with success, and has been counsel in a number of "landmark" decisions in this area. *See* Doc. 176-1, ¶ 31. This factor weighs in favor of approval.

***The stage of the proceedings and amount of discovery completed.*** The settlement was reached after contested litigation for nearly two years. The parties had exchanged sufficient information to fully evaluate the claims and defenses asserted in the case. *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711-SJD, *2 (S.D. Ohio Jan. 18, 2019) ("[t]he Court finds that this exchange of information is sufficient to inform settlement negotiations by experienced counsel."). Early resolution of claims is encouraged by district courts. *See Taifa v. Bayh*, 846 F. Supp. 723, 728-29 (N.D. Ind. 1994); *Isby*, 75 F.3d 1191 (approving settlement early in the case where the parties had conducted a thorough investigation of the background and facts

pertinent to the claims); *In re AT&T Mobility Wireless Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) (same).

**c. The Notice Process**

The Court will consider the notice process used in this case. The class members received a Notice of the Settlement detailing the claims raised by Plaintiff, the terms of the settlement, the allocation of the settlement among those who had previously opted in in response to the collective action and those who had not, the class members' options to opt out, object, or remain in the class, the proposed attorneys' fees and costs, and the proposed service award. Doc. 166-3.

The parties retained a claims administrator to distribute the Notice of Settlement. The Defendants, who were in possession of the contact information class members' obtained during the class members' employment, provided a class list of 995 individuals to the claims administrator. Doc. 166-2, ¶ 6.A.i. Prior to sending notice, the claims administrator ran a skip trace search on each class member in an effort to find their most up-to-date address. *Id.* at ¶ 6.A.ii. On December 9, 2019, the claims administrator distributed the Notice of Settlement to the class members by mail and email. Defendants subsequently learned that eight names were inadvertently left off of the original class list, and notice was sent to them on January 27, 2020.

In response to the Notice, no class member opted out of the settlement or objected to the settlement on behalf of themselves and their fellow class members.

The Court finds that this notice process provided class members with an appropriate notice under Rule 23 and met the FLSA's remedial goals.

The Court **GRANTS** Plaintiff's motion for final approval of the Settlement Agreement.

**d. Fees, Expenses, and Service Awards**

**i. Attorneys Fees**

Class Counsel asks the Court to approve an attorneys' fees award of one-third of the settlement fund, *i.e.*, $269,166.67. Defendants do not object to the requested fee award.

The parties' settlement is a "common fund" settlement. "The entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999); *Williams v. MGM Pathe Commc'ns Co.*, 129 F.3d 1026, 2017 (9th Cir. 1997); *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015). "The members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82 (1980). Here, all of the class members will be mailed a check at their last known address, or an address obtained through the investigative and communication efforts of the claims administrator, for their settlement award amount. *See* 166-2, ¶ 6.C.x. (detailing efforts of Claims Administrator to locate Class Members with undeliverable addresses).

District courts in the Seventh Circuit typically award 1/3 of the common fund in attorneys fees. *See, e.g., Zolkos*, 2015 WL 4275540, *3 (approving 1/3 of total common fund). Here, "[t]he fee award is justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims." *Zolkos*, 2015 WL 4275540, *3.

A lodestar cross-check is not necessary. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (stating "consideration of a lodestar cross check is not an issue of required methodology."). Still, Class Counsel's lodestar of $140,000 supports the attorneys fee requested.

The Court **GRANTS** Class Counsel's request for $269,166.67 in attorneys fees.

### ii. Litigation and Administration Costs

The Court also approves the reimbursement of litigation costs advanced by Class Counsel in the amount of $9,535.12, and approves up to $7,500 of the settlement fund to be used to pay for the costs of claims administration, to be paid out of the settlement fund. Any claims administration costs in excess of $7,500 will be paid by Defendants. These costs are reasonable and are approved. *See, e.g., Zolkos*, 2015 WL 4275540, *3 (approving reimbursement of litigation costs and settlement administration costs from the settlement fund). Accordingly, the Court **GRANTS** Class Counsel's request for reimbursement of $9,535.12 in litigation expenses, and **GRANTS** Plaintiff's request that up to $7,500 of the settlement fund will be used to pay for the costs of claims administration.

### iii. Service Award

The Court also approves the request for a service award in the amount of $10,000 to Samantha Young. Ms. Young filed this case at great risk to herself, provided valuable insight to his Counsel throughout the case, and her efforts resulted in substantial payments to 995 minimum wage pizza delivery drivers. The requested service award is reasonable. *See, e.g., Zolkos*, 2015 WL 4275540, *3 (approving $10,000 service award for 6 named plaintiffs); *Mullins*, 2019 WL 275711, *6 (approving $10,000 service award in pizza delivery driver case); *Arledge*, 2018 WL 5023950, *6 (approving $10,000 service award in pizza delivery driver case); *Brandenburg*, 2019 WL 6310376, *7 (approving $10,000 service award in pizza delivery driver case). Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000.

## IV. Conclusion

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval is **GRANTED**. Accordingly:

1. Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed.
2. The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice.
3. All class members who negotiate their settlement checks are bound by this Judgment and by the terms of the Settlement Agreement.
4. Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.
5. The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims

on behalf of the class members. Plaintiff participated in the Action, acted to protect the Class, and assisted his counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Class. Class Counsel have made application for an award of $269,166.67 in attorneys' fees and $9,535.12 in expenses incurred in the prosecution of the Action on behalf of themselves and the other Plaintiff's counsel. The combined total of the award is $278,701.79, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $278,701.79 as attorneys' fees and expenses. Further, Plaintiff is entitled to a fair, reasonable and justified service award of $10,000, to be paid by Defendant from the Settlement Fund. The Court also approves up to $7,500 of the Settlement Fund to be used for Settlement Administration, and order that Defendants pay any additional costs relating to Administration.

6. Upon the conclusion of the settlement procedure outlined in the Settlement Agreement, the parties stipulate that the lawsuit will be dismissed with prejudice.
7. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

Date: February 26, 2020

Robert W. Gettleman

ROBERT W. GETTLEMAN
UNITED STATES DISTRICT JUDGE